IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| ABE B. HOLMES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CV 318-026 |
| | ) |
| MR. HATTLET, Correctional Officer; | ) |
| MR. MOSLEY, Correctional Officer; and | ) |
| MR. BLAIR, Assistant Warden, | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Georgia State Prison in Reidsville, Georgia, has filed a complaint pursuant to 42 U.S.C. § 1983 regarding events alleged to have occurred at Johnson State Prison ("JSP") in Wrightsville, Georgia. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

### I.   SCREENING OF THE COMPLAINT

#### A.   BACKGROUND

Plaintiff names as Defendants: (1) Correctional Officer Hattlet; (2) Correctional Officer Mosley; and (3) Assistant Warden Blair. (Doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On July 21, 2017, officers called Plaintiff to the officer location area in his dorm at JSP. (Id. at 5.) Plaintiff noticed Officer Hattlet waiting to be let into the dorm. (Id.) A few minutes later, Officer Hattlet entered the dorm yelling, "where is the smart-mouth inmate." (Id.) The dorm officer pointed at Plaintiff and told Officer Hattlet to "get this ugly M-F out of her dormitory." (Id.) Officer Hattlet approached Plaintiff and pushed him "fast and forcefully" toward the entrance of the dorm. (Id. at 5-6.) Officer Mosley rushed toward Plaintiff and Officer Hattlet. (Id. at 6.) Both officers forcefully pushed Plaintiff against a wall by both arms, slamming Plaintiff face-forward into the wall. (Id.) Plaintiff instantly felt pain in his face, neck, head, and shoulder. (Id.) Officers Hattlet and Mosley handcuffed Plaintiff behind his back and took him toward the main control and counselor area. (Id. at 6-7.) Officers Hattlet and Mosley directed Plaintiff toward the medical and ID area and led him into an ID holding cell. (Id. at 7.) The officers left Plaintiff in the cell handcuffed with the door ajar for five to ten minutes. (Id. at 7-8.)

When they returned, Officer Mosley placed blue gloves in his pants and Officer Hattlet put gloves on his hands. (Id. at 8.) Officer Hattlet told Plaintiff to face the wall, removed the handcuffs, and asked Plaintiff what he said to the dormitory officer. (Id.) The officers turned Plaintiff around but before he could answer, Officer Hattlet struck Plaintiff twice in his "head, face, neck, and shoulder area" with a closed fist. (Id. at 9-10.) Plaintiff felt a "very great deal of pain." (Id. at 9.) Officer Mosley did not attempt to stop Officer Hattlet from striking Plaintiff. (Id.) Officer Mosley then struck Plaintiff once in the "head, face, neck, and shoulder area." (Id. at 10.) Officer Hattlet did not attempt to stop Officer Mosley from striking Plaintiff. (Id.) Both officers could have stopped the other from attacking Plaintiff. (Id. at 11.) Plaintiff did nothing to

2

cause the officers to attack him and their sole purpose was to cause Plaintiff harm. (Id. at 10-11.)

After being in the cell for one to two hours, Officers Hattlet and Mosley handcuffed Plaintiff and led him out of the cell. (Id. at 12.) Plaintiff thought he would receive medical treatment because they passed the medical department. (Id.) However, when Plaintiff attempted to stop, the officers told him to "continue walking." (Id. at 12, 15.) Officer Mosley said "you run your mouth to[o] much," put the blue gloves on, and struck Plaintiff in the face. (Id. at 13.) Plaintiff almost passed out from the pain but was able to recover. (Id.) Plaintiff told the officers they should have killed him because it did not make sense for him to be assaulted for such a small matter. (Id.) Plaintiff also told them if they were finished, he was finished. (Id.) The officers agreed and led Plaintiff to an isolation holding area pending a disciplinary report hearing. (Id.)

Plaintiff experienced swelling and bruising where the officers struck him, but he did not receive medical treatment at that time. (Id. at 15.) Plaintiff remained in the isolation holding area for seven days. (Id. at 16.) Medical staff saw Plaintiff for his injuries, and Plaintiff was in constant pain and suffering. (Id.) Plaintiff reported the incident to Assistant Warden Blair, Counselor Brown, and Mrs. Thomas. (Id.) Upon release from isolation, Plaintiff returned to his dorm, where he spoke to the criminal investigative officers about the incident. (Id.) However, Sgt. Scott approached Plaintiff later and offered him "store goods" in exchange for Plaintiff dropping the grievance. (Id.) Plaintiff has suffered "emotion[al] flash-back[s]" and fear for his safety as a result of the attack. (Id. at 10.) Furthermore, there is an ongoing pattern of physical violence at JSP that causes inmates to be "in great fear of their life." (Id. at 10.)

3

For relief, Plaintiff requests: declaratory judgment; preliminary and permanent injunctions prohibiting Officers Hattlet and Mosley from using threats or violence against Plaintiff or any other inmates; $15,000 in compensatory damages against each Defendant jointly and severally; $35,000 in punitive damages and $35,000 in compensatory damages against Assistant Warden Blair; $75,000 in punitive damages against Officers Hattlet and Mosley jointly and severally; and costs of the suit. (Id. at 20-21.)

### B.     DISCUSSION

#### 1.     Legal Standard for Screening.

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level."

4

Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State a Claim for Supervisory Liability Against Defendant Blair.

Plaintiff attempts to hold Mr. Blair liable based on Plaintiff reporting Officers Hattlet and Mosley's actions to Mr. Blair. (Doc. no. 1, p. 15.) Plaintiff does not allege any additional facts against Mr. Blair otherwise. (Id.) However, "[s]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003). "Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must

plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted).  Therefore, to hold a supervisor liable, Plaintiff must demonstrate that either (1) he actually participated in the alleged constitutional violation, or (2) there is a causal connection between his actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).  Here, Plaintiff only alleges he informed Mr. Blair of the attack after it occurred.  Nowhere does Plaintiff allege Mr. Blair was responsible for allowing Officers Hattlet and Mosley attack him.

Moreover, Plaintiff does not show Mr. Blair was directly involved by merely alleging he viewed a grievance or report Plaintiff wrote about his problem. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), *cert. denied*, 530 U.S. 1264 (2000); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Likewise, Plaintiff has not alleged a causal connection between Mr. Blair and the asserted constitutional violation.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation).  The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high.  In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences."  Brown, 906 F.2d at 671 (emphasis added).  A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff does not draw the necessary causal connection to any alleged constitutional violation.  Simply notifying Mr. Blair of the attack in a report after the fact does not show personal participation by Mr. Blair, let alone suggest he instituted a policy or custom causing such a problem. Furthermore, although Plaintiff alleges there is an ongoing pattern of the use of physical force by officers against inmates at JSP, (doc. no. 1, p. 11), his conclusory allegation alone is insufficient to meet the high standard for demonstrating a history of widespread abuse sufficient to put Mr. Blair on notice.  In sum, Plaintiff has not shown Mr.

7

Blair actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted against Defendants Blair.

## II.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's claims against Defendant Blair be **DISMISSED** for failure to state a claim Defendant Blair be **DISMISSED** from this case. In a companion Order, the Court has allowed Plaintiff's excessive force and failure to intervene claims against Defendants Hattlet and Mosley to proceed.

SO REPORTED and RECOMMENDED this 18th day of June, 2018, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA