IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| ABE B. HOLMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 318-026 |
| ) | |
| MR. HALLETT, Correctional Officer; ) | |
| MR. MOSLEY, Correctional Officer; and ) | |
| MR. BLAIR, Assistant Warden, ) | |
| ) | |
| Defendants. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Georgia State Prison in Reidsville, Georgia, has filed an amended complaint pursuant to 42 U.S.C. § 1983 regarding events alleged to have occurred at Johnson State Prison ("JSP") in Wrightsville, Georgia. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

**I.      SCREENING OF THE AMENDED COMPLAINT**

   **A.     BACKGROUND**

Plaintiff names as Defendants: (1) Correctional Officer Hallett; (2) Correctional Officer Mosley; and (3) Assistant Warden Blair. (Doc. no. 25, pp. 1-3.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On July 21, 2017, Officer Hallett reported to Plaintiff's dorm at JSP after receiving a call from the dorm officer. (Id. at 10.) A few minutes later, Officer Hallett entered the dorm asking, "where was the smart-mouth inmate at." (Id.) The dorm officer pointed at Plaintiff and told Officer Hallett "their [sic] go the ugly M-F, get his ass out [of] here . . . ." (Id.) Officer Hallett approached Plaintiff and pushed him "fast and forcefully" toward the entrance of the dorm. (Id.) Once outside, Officer Mosley rushed toward Plaintiff and Officer Hallett. (Id.) Both officers forcefully pushed Plaintiff against a wall by both arms, slamming Plaintiff face-forward into the wall. (Id.) Plaintiff instantly felt pain in his face, neck, head, and shoulder. (Id.) Officers Hallett and Mosley handcuffed Plaintiff behind his back and took him toward the main control and counselor area. (Id.) Officers Hallett and Mosley directed Plaintiff toward the medical and ID area and led him into an ID holding cell. (Id. at 10-11.) The officers left Plaintiff in the cell handcuffed with the door ajar. (Id. at 11.)

When they returned, Officer Mosley placed blue gloves in his pants and Officer Hallett put gloves on his hands. (Id.) Officer Hallett asked Plaintiff to face the wall, removed the handcuffs, and asked Plaintiff what he said to the dormitory officer. (Id.) The officers turned Plaintiff around but before he could answer, Officer Hallett struck Plaintiff twice in his "face, neck, head, and shoulder area." (Id.) Officer Mosley did not attempt to stop Officer Hallett from hurting Plaintiff. (Id.) Officer Mosley then put on gloves and struck Plaintiff once on his face. (Id. at 12.) Officer Mosley said he hit Plaintiff because Plaintiff was "running [his] mouth." (Id.) Both officers could have stopped the other from attacking Plaintiff. (Id.)

After being in the cell for thirty to forty-five minutes, Officers Hallett and Mosley handcuffed Plaintiff and led him out of the cell. (Id.) The officers did not ask Plaintiff whether

2

he needed medical attention and did not allow him to be seen by medical staff. (Id. at 13.) Instead, the officers told Plaintiff to "continue walking." (Id.) Plaintiff felt swelling and bruises in his face, neck, head, and shoulder. (Id.) The officers led Plaintiff to a cell in the isolation holding area. (Id.)

Plaintiff informed the floor officer he needed medical attention, and the floor officer told Plaintiff to fill out a sick call form. (Id. at 19.) Plaintiff saw a member of the medical staff five to seven days later. (Id. at 5.) Plaintiff informed another officer about the beating, and she told Plaintiff she would inform his counselor. (Id. at 19.) Later, the disciplinary report officer informed Plaintiff he would be released from segregation the next Saturday if he pleaded guilty to the charges, and Plaintiff agreed. (Id.) Plaintiff informed the disciplinary report officer about the beating, but she stated she could only give Plaintiff a grievance form. (Id.) Plaintiff gave Assistant Warden Blair a letter about the incident, and Blair stated he would look into the matter. (Id.) Upon release from isolation, Plaintiff returned to his dorm, where he spoke to Inv. Gittins, a criminal investigative officer, about the incident. (Id. at 20.) After making an incident report, per Inv. Gittins' instruction, Sgt. Scott approached Plaintiff and offered him "store goods" and assured Plaintiff of his safety in exchange for Plaintiff dropping the grievance. (Id.) Plaintiff informed Inv. Gittins, who said Sgt. Scott's actions were bribery. (Id.) Plaintiff informed the warden of the matter but received no response. (Id.)

Assistant Warden Blair called Plaintiff to his office and threatened Plaintiff with bodily harm in an angry and violent manner. (Id.) Assistant Warden Blair threatened to place Plaintiff's life in danger if Plaintiff "made him a part of this incident." (Id. at 5.) Plaintiff believes Assistant Warden Blair told Officers Hallett and Mosley to cause Plaintiff harm. (Id. at

3

20.) Plaintiff is in constant fear of harm. (Id.) Furthermore, there is an ongoing pattern of physical violence at JSP that causes inmates to be "in great fear of their life." (Id. at 10.)

For relief, Plaintiff requests: declaratory judgment; preliminary and permanent injunctions prohibiting Officers Hallett and Mosley from using threats or violence against Plaintiff or any other inmates; $75,000 in compensatory damages against each Defendant jointly and severally; $35,000 in punitive damages and $35,000 in compensatory damages against Assistant Warden Blair; $75,000 in punitive damages against Officers Hallett and Mosley jointly and severally; and costs of the suit. (Id. at 5.)

### B. DISCUSSION

#### 1. Legal Standard for Screening.

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 327 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972); Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, this liberal construction does not mean that the court has a duty to re-write the amended complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff Fails to State a Claim Against Assistant Warden Blair for His Alleged Retaliatory Threats

Plaintiff seeks to bring a claim against Assistant Warden Blair for threatening him with bodily harm or death if Plaintiff named Assistant Warden Blair in the present lawsuit. (Doc. no. 25, pp. 5, 20.) Plaintiff's allegations fail to state claim against Assistant Warden Blair.

First, mere "allegations of verbal abuse and threats by prison officers" are not sufficient to state an Eighth Amendment claim. Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866

(11th Cir. 2008) (dismissing plaintiff's Eighth Amendment claim because "verbal abuse alone is insufficient to state a constitutional claim") (citing Edwards v. Gilbert, 867 F.3d 1271, 1274 n.1 (11th Cir. 1989)); see also Leonard v. Scott, No. 17-14248-CIV-ROSENBERG, 2017 WL 8772149, at *9 (S.D. Fla. Oct. 6, 2017) ("Derogatory, demeaning, profane, threatening, or abusive comments made by an officer to an inmate, no matter how repugnant or professional, do not rise to the level of a constitutional violation.").

Second, to state a First Amendment retaliation claim based on a threat, a plaintiff must allege "'(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.'" Hoever v. Hampton, No. 4:14cv273-WS/CAS, 2016 WL 3647596, at *3 (N.D. Fla. May 19, 2016) (quoting Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). However, "threats that are not carried out and that do not deter a plaintiff from engaging in speech are not actionable as retaliation." Bishop v. McLaughlin, No. 5:11-CV-107(MTT), 2012 WL 1029507, at *4 (M.D. Ga. Jan. 23, 2012), adopted in part by 2012 WL 1029499, at *8 (M.D. Ga. Mar. 26, 2012) (citing Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1292 n.13 (11th Cir. 2002)). Here, Plaintiff clearly was not deterred by Assistant Warden Blair's alleged threat, because Plaintiff named Assistant Warden Blair as a defendant in both the original and amended complaints. (See doc. nos. 1, 25.) Furthermore, Plaintiff does not allege Assistant Warden Blair attempted to carry out the alleged threats during the prosecution of the present lawsuit. Accordingly, Plaintiff fails to state either a First or Eighth Amendment claim against Assistant Warden Blair based on his alleged retaliatory threats.

### 3. Plaintiff Fails to State a Claim for Supervisory Liability Against Assistant Warden Blair

Plaintiff also attempts to hold Assistant Warden Blair liable based on allegedly telling Officers Hallett and Mosley to cause him harm. (Doc. no. 25, p. 20.) However, "[s]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Dalrymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003). "Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold a supervisor liable, Plaintiff must demonstrate that either (1) he actually participated in the alleged constitutional violation, or (2) there is a causal connection between his actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

First, Plaintiff does not allege Assistant Warden Blair was actually participated in the alleged attack. Second, Plaintiff has not alleged a causal connection between Mr. Blair and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's

7

improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff does not draw the necessary causal connection to any alleged constitutional violation. While Plaintiff alleges he "believe[s] that Mr. Blair told Hallett and Mosley to cause [him] harm," (doc. no. 25, p. 20), his conclusory allegation is unsupported by factual detail sufficient to raise his claim above the speculative level. Twombly, 550 U.S. at 555. Without factual support, Plaintiff's naked assertion Assistant Warden Blair directed the attack does not create the necessary causal connection.

Additionally, although Plaintiff alleges there is an ongoing pattern of the use of physical force by officers against inmates at JSP, (doc. no. 25, p. 10), his conclusory allegation alone is insufficient to meet the high standard for demonstrating a history of widespread abuse sufficient to put Mr. Blair on notice. In sum, Plaintiff has not shown Mr. Blair actually participated in the alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted against Assistant Warden Blair.

## II.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's claims against Assistant Warden Blair be dismissed for failure to state a claim, and Assistant Warden Blair be **DISMISSED** from this case.  In a companion Order, the Court has allowed Plaintiff's excessive force, deliberate indifference to a serious medical need and failure to intervene claims against Officers Hallett and Mosley to proceed.

SO REPORTED and RECOMMENDED this 4th day of October, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA